UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PATRICIA PARKER | CIVIL ACTION NO. 21-cv-3327 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| PETSMART, LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Patricia Parker ("Plaintiff") filed a slip-and-fall suit in state court against PetSmart, LLC and one of its employees, Kenneth Pierson. PetSmart removed the case based on an assertion of diversity jurisdiction even though Plaintiff and defendant Pierson are both Louisiana citizens. PetSmart argued that Mr. Pierson's citizenship should be ignored based on the improper joinder doctrine.

Before the court is Plaintiff's Motion to Remand (Doc. 7) on the grounds that (1) the removal was untimely and (2) PetSmart has not met its burden of establishing improper joinder. The issues have been fully briefed. For the reasons that follow, it is recommended that the motion to remand be denied.

**Timeliness of the Removal**

A defendant must file a notice of removal (1) within 30 days after service of the initial petition or (2), if the case stated by the initial petition is not removable, within 30 days after receipt of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(1) and (3). Plaintiff does not argue that service of her petition triggered the removal period. She contends that a later email exchange between counsel amounted to "other paper" that triggered the 30-day period, and the notice of removal was filed after it expired.

Plaintiff alleged in her petition that she was pushing a shopping cart in a PetSmart store in Bossier City when she slipped on a slippery substance. She alleged that she seriously injured her head, neck, and lower back, and she claimed unspecified damages in categories that included past and future medical bills, lost wages, and pain and suffering. In accordance with state law, the petition did not pray for a particular amount of damages. Plaintiff does not argue that the service of this petition triggered the removal period, and it would not because an initial petition does not trigger the first removal period unless "that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992).

Plaintiff argues that the removal period was triggered on June 22, 2021 when PetSmart's counsel emailed Plaintiff's counsel and asked:

> PetSmart has a SIR (true SIR) totaling $500k. We have no medical records [but] have been told this appears to be a soft tissue injury case. Can you confirm this and let me know if we can disregard the requests for insurance policies due to the $500k SIR?

Plaintiff's counsel replied: "My client's injuries are more severe than soft tissue. I need copies of the insurance policies." The parties do not explain the reference to SIR, but it likely means self-insured retention. That is a dollar amount specified in a liability

insurance policy that must be paid by the insured (PetSmart) before the insurance policy will respond to the loss.

Plaintiff contends that this email, together with the claim for serious injuries to her head, neck, and lower back made it clear that her claim exceeded $500,000, well in excess of the $75,000 amount in controversy requirement. PetSmart did not file its notice of removal until September 15, 2021, more than 30 days after the email exchange. PetSmart responds that it elected to remove the case after it received discovery responses from Plaintiff on August 17, 2021 that included details about Plaintiff's description of her injuries, copies of medical records that indicated multiple bulging discs, several months of physical therapy, a recommendation for cervical injections and, if the injections were unsuccessful, discectomy and fusion surgery. PetSmart removed the case within 30 days after it received those discovery responses.

Assuming the email from counsel qualifies as "other paper" under the statute, it does not trigger the removal period under Section 1446(b)(3) unless "the information supporting removal" in the paper is "unequivocally clear and certain" that the facts now support removal. Bosky v. Kroger Texas, LP, 288 F.3d 208, 211 (5th Cir. 2002), clarified in Mumfrey, 719 F.3d at 400; Morgan v. Huntington Ingalls, Inc., 879 F.3d 602, 609 (5th Cir. 2018). "Bosky should be read as imposing a trigger for the second removal period that is at least as strict as that set forth in Chapman." Smith v. Wal-Mart Louisiana, LLC, 2013 WL 4781778, *3 (W.D. La. 2013) (Hayes, M.J.).

The email response did not make it unequivocally clear and certain that the amount in controversy exceeded $75,000. The only facts it provided were that Plaintiff's injuries

were more severe than soft tissue, and counsel stated the need for copies of the insurance policies. That perhaps *implied* that counsel valued his client's claims at greater than $500,000, but an implication is not the same as making something unequivocally clear and certain. PetSmart did exactly what the rules intend and encourage. Rather than immediately file a protective removal that could result in litigation over whether it satisfied its burden with respect to the amount in controversy, it waited until it received sufficient factual information to shoulder that burden, and then it removed the case. The email exchange did not trigger the removal period under the Bosky standard, so the removal was timely.

**Improper Joinder of Mr. Pierson**

### A. The Improper Joinder Doctrine

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff. That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal. To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed. Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). The Fifth Circuit has since adopted the term "improper joinder" to describe the doctrine. Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

The most common way a defendant shows improper joinder is to demonstrate the inability of the plaintiff to establish a cause of action against the non-diverse party in state

court. The defendant must show that there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the non-diverse defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings: (1) a Rule 12(b)(6)-type challenge to the pleadings alone or (2) an effort to pierce the pleadings and demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail. "[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." International Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 818 F.3d 193, 207 (5th Cir. 2016).

**B. The Petition**

Plaintiff alleged in her petition that she was a customer in PetSmart's Bossier City store when a slippery substance on the floor caused her to slip and fall. She alleged that, at all pertinent times, Kenneth Pierson "was the manager of the Bossier Store" and "was responsible for ensuring that no unreasonably dangerous conditions existed on the floor." Petition, ¶¶ 2-7. Plaintiff alleged that the dangerous condition created by the slippery substance "was reasonably foreseeable by PetSmart and Kenneth Pierson." ¶ 8. "PetSmart and Kenneth Pierson created the condition which caused the damage to Plaintiff." ¶ 9. In the alternative, "PetSmart and Kenneth Pierson had actual or constructive notice and therefore knew or should have known of the dangerous condition which caused the damage to Plaintiff prior to Plaintiff's accident." ¶ 10. Plaintiff also alleges that both PetSmart and Pierson failed to exercise reasonable care to remedy the dangerous condition, and they were

negligent by allowing the substance on the floor where patrons would be walking, failing to properly inspect the store, failing to warn patrons, and failing to clean the substance off the floor. ¶¶ 11-13. Plaintiff alleged that Pierson was an agent or employee of PetSmart and was acting in the course of his employment, making PetSmart vicariously liable for his fault. ¶¶ 18-19.

### C. Pierson Affidavit

PetSmart's notice of removal was accompanied by an affidavit from Mr. Pierson in support of the improper joinder plea. Pierson testified that he is currently employed as an assistant store leader at the PetSmart store in Bossier City. He has never met Plaintiff "and was not present at the store at the time of her fall" on October 14, 2020. Mr. Pierson stated that the incident report prepared by another employee shows that Plaintiff's fall occurred around 6:00 p.m. on October 14, 2020. PetSmart timekeeping records from that date show that Pierson "worked at the store between 4:13 A.M. and 12:35 P.M. that day." Pierson added that he specifically remembered arriving at the store very early that morning to stock shelves before the store opened, but he left the store more than five hours before Plaintiff fell. Pierson also stated that he has "no personal knowledge of the substance that Ms. Parker claims to have slipped on or how it got on the floor."

### D. Piercing the Pleadings

The more common way to assess an improper joinder plea is to apply a Rule 12(b)(6) type analysis. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." Smallwood, 385 F.3d at 573. "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or

omitted discrete facts that would determine the propriety of joinder." Id. "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id. PetSmart attempts to shoulder its burden by piercing the pleadings with Mr. Pierson's affidavit.

Piercing the pleadings should not be a full-blown merits contest equivalent to a motion for summary judgment. Rather, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Guillory v. PPG Industries, Inc., 434 F.3d 303, 311 (5th Cir. 2005), quoting Smallwood, 385 F.3d at 574. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state (or non-diverse) defendant alleged to be improperly joined." Smallwood, 385 F.3d at 574.

Smallwood provided examples of the type of inquiry appropriate under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that can easily be disproved if not true." Smallwood, 385 F.3d at 574 n. 12, citing Travis v. Irby, 326 F.3d 644, 648-49 (5th Cir. 2003).

### E. Analysis

In Louisiana, an employee such as Mr. Pierson can be held personally liable for injuries sustained by a third person on an employer's premises only if "(1) the employer

owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care." Moore v. Manns, 732 F.3d 454, 456–57 (5th Cir. 2013) (per curiam) (quoting Canter v. Koehring Co., 283 So. 2d 716, 721 (La. 1973). Notably, "a defendant-employee's general administrative responsibility is insufficient to impose personal liability." Id. at 457; Donaldson v. Sam's E., Inc., 2021 WL 4898724, *2 (5th Cir. 2021). Courts have routinely held that retail store and restaurant managers were not personally liable for a customer's injury on a store premises when the manager had no connection to the accident other than general managerial responsibilities. See, e.g., Watson v. Daniel, 2015 WL 737650,*4 (W.D. La. 2015) (collecting cases).

In this case, Plaintiff offers general allegations that Mr. Pierson failed to exercise reasonable care to keep the store clean and that the presence of the substance was reasonably foreseeable to him. But Plaintiff also directly alleges that "PetSmart and Kenneth Pierson created the condition which caused the damage to Plaintiff." She also alleges, in the alternative, that Pierson had actual or constructive notice of the dangerous condition and did not remedy it or warn patrons.

Defendants first argument is that the allegations in Plaintiff's complaint with respect to Mr. Pierson are purely conclusory so do not pass muster under the Twombly standard that applies when assessing the adequacy of the pleadings in an improper joinder contest. International Energy Ventures, 818 F.3d at 200-208. Defendants also argue that they should prevail on their improper joinder plea based on a piercing the pleadings approach.

The undersigned finds that this is a case in which piercing the pleadings is an appropriate exercise of the court's discretion.

The notice of removal was accompanied by Mr. Pierson's affidavit that squarely contested the key allegations in the complaint that were directed at him. Although Pierson did not say what his position was at the time of the accident, he stated that he was currently employed as an assistant store leader at PetSmart. He referred to the incident report that showed Plaintiff's fall happened around 6:00 p.m. on October 14, 2020. He referred to timekeeping records and his personal recollection that he worked at the store between 4:13 a.m. and 12:35 p.m. that day, so he left the store over five hours before Plaintiff fell. Pierson stated that he had never met Plaintiff, was not present at the store at the time of her fall, and had no personal knowledge of the substance that she claims to have slipped on or how it got on the floor.

The incident report submitted by Plaintiff (Doc. 7-4) indicates that the Store Manager/Contact is Dawn Meyers, and Mr. Pierson's name does not appear on the report. Plaintiff's description of the event, given in an answer to an interrogatory, does not mention Mr. Pierson or anyone fitting his description as being present at the time of her fall. She did say that she recalled a female employee "being on the phone with who she said was the store manager telling him what had just happened to me." Doc. 7-6, p. 2. There is no indication that the person on the phone was Mr. Pierson.

The Fifth Circuit applied the <u>Canter</u> test to a similar contest in <u>Guillory v. PPG Industries, Inc.</u>, 434 F.3d 303 (5th Cir. 2005), where the plaintiffs sued for injuries caused by a chemical release at a PPG facility. They attempted to join individual employee-

defendants, arguing that the employees had safety responsibilities under Canter. The employee-defendants offered evidence in which they denied any responsibility for ensuring adequate monitoring devices or any knowledge of whether steps were taken to prevent additional chemical releases after previous accidents at the facility. The employees further testified that such functions fell within the general administrative responsibilities of the unit, rather than any individual employee. The plaintiffs offered no contradictory evidence, so the Fifth Circuit affirmed the district court's decision that the plaintiffs had no reasonable basis to hold the employee-defendants liable. The employee-defendants were improperly joined, so remand was denied.

The plaintiffs in Anderson v. Georgia Gulf Lake Charles, LLC, 342 Fed. Appx. 911 (5th Cir. 2009) sued for personal injury against Georgia Gulf and seven of its employees. Georgia Gulf removed and argued that the employees were improperly joined to defeat diversity jurisdiction. The complaints alleged that Georgia Gulf delegated responsibility for operations and emergency response activities to each of the employee-defendants personally and that this created duties of care that were owed individually by those employees to the plaintiffs. In response to a motion to remand, Georgia Gulf submitted affidavits of the employee-defendants in which each denied having been delegated any personal duties as alleged in the complaints and affirmatively stated that if Georgia Gulf had delegated any such duties, they were general administrative responsibilities. The employee-defendants also submitted affidavits in which they specifically denied that they intentionally released toxic chemicals, denied any personal knowledge that the fire at issue was likely to occur, or that the operation of equipment posed a danger. The plaintiffs did

not submit any contradictory evidence, the district court determined that there was no reasonable basis to predict that the plaintiffs could recover against the employee-defendants under Louisiana law, and the Fifth Circuit affirmed.

Plaintiff cites Ford v. Elsbury, 32 F.3d 931 (5th Cir. 1994), but that case is easily distinguishable. In Ford, the plaintiffs offered evidence that directly contradicted the testimony of the employee-defendant who denied personal responsibility for the safety of the plant or personal knowledge of a leak that caused an explosion. The plaintiffs' evidence included an employee's testimony that he told the manager about the leak and the unsafe condition it created, to which the manager replied that you sometimes had to overlook safety to get the job done. Plant procedures called for a shutdown in the event of a leak, and the manager had the authority to do so, but an employee testified that when he became aware of the leak and ordered a shut down, the manager overruled him. In light of that contradictory evidence offered by the plaintiffs, the Fifth Circuit found that there was a reasonable possibility of establishing a claim against the manager, and the case was remanded.

Defendants in this case have pierced the pleadings and submitted evidence that squarely contests the conclusory allegations that Mr. Pierson personally created the dangerous condition or had any role, duty, or knowledge in connection with it. Plaintiff has not offered any competing evidence. As in Guillory and Anderson, the removing defendant has met its burden with respect to improper joinder. See also Thomas v. Walmart Louisiana, LLC, 2011 WL 3359929 (W.D. La. 2011) and Dusang v. Lowe's Home Centers, Inc., 2008 WL 3884395 (W.D. La. 2008), two cases in which Magistrate

Judge Kirk concluded that a store employee was improperly joined when the complaint contained general accusations that the employee was aware of or even created a hazardous condition but the employee's uncontested affidavit disputed the allegations that he or she had any personal role in connection with the dangerous condition. PetSmart has met its burden of demonstrating the improper joinder of Mr. Pierson. The appropriate action when a defendant has been improperly joined is to dismiss all claims against him without prejudice. International Energy Ventures, 818 F.3d at 210.

Accordingly,

It is recommended that Plaintiff's Motion to Remand (Doc. 7) be denied and that all claims against Kenneth Pierson be dismissed without prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of March, 2022.

Mark L. Hornsby
U.S. Magistrate Judge